1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

9

## SOUTHERN DISTRICT OF CALIFORNIA

10

ESTATE OF ABDIEL SARABIA
HERNANDEZ, by estate representative
Maren Miller; LARISSA GUTIERREZ;
N.S., a minor, through his mother and
General Guardian, Larissa Gutierrez; I.S.,
a minor, through her mother and General
Guardian, Mallori Ewan; and A.S.S. and
A.S., minors, through their mother and
General Guardian, Angelica Reyes,

                            Plaintiffs,

v.

COUNTY OF SAN DIEGO,
And DOES 1-10,

                            Defendants.

Case No.:  24-cv-00032-DMS-DEB

**ORDER RE: DEFENDANTS'
MOTION TO DISMISS**

11
12
13
14
15
16
17
18
19
20
21
22

     Pending before the court is Defendant San Diego County's ("Defendant" or "the County") motion to dismiss, (ECF No. 8), Plaintiff Estate of Abdiel Sarabia Hernandez's complaint, (Compl., ECF No. 1), for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  Plaintiff filed a response in opposition, (ECF No. 9), and Defendant filed a reply.  (ECF No. 10.)

23
24
25
26
27
28

## I.   BACKGROUND

This case begins in January 2022.  Abdiel Sarabia Hernandez ("Sarabia") was a pretrial detainee at the George Bailey Detention Center, awaiting criminal proceedings in San Diego Superior Court.  (Compl. ¶ 14.)  There, in the months leading up to his death, Plaintiffs allege that Sarabia gained weight and showed outward signs of decline in his health.  (*Id.* ¶ 16.)  Then, sometime on July 21, 2022, Sarabia began to feel ill.  (*Id.* ¶ 17.)  Sarabia told one of the one of the correctional deputies ("Doe One") that he needed medical attention—as did another detainee.  (*Id.*)  In response, Doe One did not take Sarabia to the infirmary or request a medical exam for Sarabia.  (*Id.*)  Instead, he told Sarabia to get back into bed.  (*Id.*)

Later that day, three correctional deputies (Doe Two, Doe Three, and Doe Four) began distributing medicine in Sarabia's housing module.  (*Id.* ¶ 18–19.)  They called Sarabia's name—but he was too sick to hear the call, appear, or answer.  (*Id.*)  Doe Two, Doe Three, and Doe Four did not check to see why Sarabia did not respond.  (*Id.*)  Instead, they delegated that task to another detainee.  (*Id.* ¶ 19.)  That detainee checked and reported back that Sarabia did not respond and did not look good.  (*Id.* ¶ 20.)  Then, Doe Two, Doe Three, and Doe Four left—they did not observe Sarabia or confirm that he was not suffering from a medical emergency.  (*Id.*)

That evening, the correctional officers assigned to the housing module did not perform proper "safety checks" of Sarabia.  (*Id.* ¶ 21.)  Nor did they look at Sarabia directly to confirm signs of life or signs of distress.  (*Id.* ¶ 22.)  Then, late on July 21 or early on July 22, other detainees checked on Sarabia.  They discovered he was not breathing and informed the correctional officers.  Help eventually arrived, but life saving measures were unsuccessful.  (*Id.*)  Sarabia died on July 22, 2022.

Sarabia is survived by his spouse, Larissa Guiterrez, and four children: N.S., I.S., A.S.S., and A.S ("Plaintiffs").  (Compl. ¶¶ 24–28.)  Before dying, Sarabia shared a close relationship with his wife and children that was "typical of a close familial relationship."

(*E.g., id.* ¶ 25.)  He also held out each Minor Plaintiff "as his child and participated in child-rearing" and supported them financially prior to his death.  (*E.g., id.*)

On January 5, 2024, Plaintiffs sued the County of San Diego and 10 Doe Defendants (collectively "Defendants").  (*Id.*)  The Complaint alleges six causes of action under:

(1) 42 U.S.C. § 1983 for violation of the Fourteenth Amendment deliberate indifference, by Sarabia's Estate, against Defendant Does 1-10.  (*Id.* ¶¶ 29–38);

(2) 42 U.S.C. § 1983 for violation of the Fourteenth Amendment deprivation of familial relationship, by Sarabia's Estate, against Defendant Does 1-10.  (*Id.* ¶¶ 39–46);

(3) California Government Code § 845.6 for wrongful death, common law negligence, and deliberate indifference to safety, each by Gutierrez and Sarabia's children, against County of San Diego and Defendant Does 1-10.  (*Id.* ¶¶ 47–54);

(4) Common law negligence, by Sarabia's Estate, against Defendant Does 1-10.  (*Id.* ¶¶ 55–61);

(5) California Civil Code § 52.1 (also known as the Bane Act), by Sarabia's Estate, against County of San Diego and Defendant Does 1-10.  (*Id.* ¶¶ 62–67); and

(6) A survival claim under California Government Code § 845.6, by Sarabia's Estate, against County of San Diego and Defendant Does 1-10.  (*Id.* ¶¶ 68–74.)

Defendants filed a motion to dismiss, arguing that the Compliant fails to state a claim for relief that can be granted.  (ECF No. 8.)  Plaintiffs responded in opposition, (ECF No. 9.), and Defendants replied.  (ECF No. 10.)  The Court vacated oral argument and took the matter under submission.  (ECF No. 11.)

24cv00032 DMS (DEB)

1
2
3

## II.   STANDARD OF REVIEW

### A.   Federal Rule of Civil Procedure 12(b)(6).

A party may file a motion to dismiss on the grounds that a complaint "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.  "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.  If Plaintiff "ha[s] not nudged" her "claims across the line from conceivable to plausible," then the complaint "must be dismissed." *Id.* at 570.

In reviewing the plausibility of a complaint on a motion to dismiss, a court must "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  But courts are not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)).

When a court grants a motion to dismiss a complaint, it must then decide whether to grant leave to amend.  Leave to amend should be "freely given" where there is no (1) "undue delay," (2) "bad faith or dilatory motive," (3) "undue prejudice to the opposing party" if amendment were allowed, or (4) "futility" in allowing amendment. *Foman v.*

24cv00032 DMS (DEB)

*Davis*, 371 U.S. 178, 182 (1962). Dismissal without leave to amend is proper only if it is clear that "the complaint could not be saved by any amendment." *Intri-Plex Techs. v. Crest Grp, Inc.*, 499 F.3d 1048, 1056 (9th Cir. 2007).

### B. Pleading Standard for "Doe" Defendants.

"[W]hen a plaintiff has claims against an unknown defendant, the plaintiff must still meet federal pleading standards when alleging facts against such defendants" in federal court. *Lomeli v. Cty. of San Diego*, 637 F. Supp. 3d 1046, 1058 (S.D. Cal. 2022). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Plaintiffs "may refer to unknown defendants as 'Does'" at the pleading stage but Rule 8 nevertheless requires a plaintiff to "'allege specific facts showing how each particular doe defendant violated'" the plaintiff's rights. *Thomas ex rel. Thomas v. Cty. of San Diego*, No. 20-cv-1979-CAB, 2021 WL 2715086, at *3 (S.D. Cal. July 1, 2021) (quoting *Keavney v. Cty. of San Diego*, No. 19-cv-1947-AJB, 2020 WL 4192286, at *4 (S.D. Cal. July 21, 2020)); *see Leer v. Murphy*, 844 F.2d 628, 634 (9th Cir. 1988) (plaintiff "must set forth specific facts as to each individual defendant's" wrongdoing). A district court should dismiss claims against Doe defendants in a Section 1983 suit when the complaint does not "even minimally explain how any of the unidentified parties . . . personally caused a violation of [the claimant's] constitutional rights." *Estate of Serna v. Cty. of San Diego*, No. 20-cv-2096-LAB, 2022 WL 827123, at *3 (S.D. Cal. Mar. 18, 2022).

### III.   DISCUSSION

Defendants raise several arguments that the FAC should be dismissed. For the reasons explained below, the Court holds that: (A) the Complaint states a Section 1983 claim for deliberate indifference to Sarabia's health and safety against Doe One, Doe Two, Doe Three, and Doe Four; (B) the Complaint states a Section 1983 claim for deprivation of familial relationship; (C) the Doe Defendants are not entitled to qualified immunity; (D) the Complaint states a claim under the Bane Act; (E) Plaintiffs have alleged standing to

bring a wrongful death claim; (F) Defendants' various immunity arguments lack merit; and (G) the Doe Defendants are permitted.

### A.    Count 1: Section 1983 (14th Amendment) - deliberate indifference to health and safety.

Plaintiffs sues the Doe Defendants under Section 1983 and the Fourteenth Amendment. (Compl. ¶¶ 29–38) (Count One). They allege that, while Sarabia was a pretrial detainee in county custody, Defendants acted with deliberate indifference to his health and violated his right to direct view safety checks. (*Id.* ¶ 33) (citing *Gordon v. Cty. Of Orange*, 6 F.4th 961, 973 (9th Cir 2021) (*Gordon II*)).

"Individuals in state custody have a constitutional right to adequate medical treatment." *Sandoval v. Cty. of San Diego*, 985 F.3d 657, 667 (9th Cir. 2021) (citing *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976). For pretrial detainees, the right to adequate medical care arises under the Due Process Clause of the Fourteenth Amendment. *Id.* (citing *Bell v. Wolfish*, 441 U.S. 520, 535–36 (1979)). When a pretrial detainee alleges that they received deficient medical care under the Fourteenth Amendment the Ninth Circuit applies an "objective deliberate indifference" standard. *Gordon v. County of Orange* (*Gordon I*), 888 F.3d 1118, 1124–25 (9th Cir. 2018). Under this standard, pretrial detainees alleging that jail officials failed to provide constitutionally adequate medical care must show:

(1) The defendant made an intentional decision with respect to the conditions under which the plaintiff was confined [including a decision with respect to medical treatment];

(2) Those conditions put the plaintiff at substantial risk of suffering serious harm;

(3) The defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and

(4) By not taking such measures, the defendant caused the plaintiff's injuries.

*Sandoval*, 985 F.3d at 669 (quoting *Gordon I*, 888 F.3d at 1125) (alteration in original). "To satisfy the third element, the plaintiff must show that the defendant's actions were 'objectively unreasonable,' which requires a showing of 'more than negligence but less than subjective intent—something akin to reckless disregard.'" *Id.* (quoting *Gordon I*, 888 F.3d at 1125).

Furthermore, part of the broader right to adequate medical care is the "right to direct-view safety checks sufficient to determine whether their presentation indicates the need for medical treatment." *Gordon II*, 6 F.4th at 973.  Indeed, the California Code of Regulations requires hourly safety checks to "determine the safety and well-being of individuals . . . through direct visual observation."  Cal. Code Regs. tit. 15, § 1027.5.[1]

Defendants argue that the facts alleged are insufficient to support a claim of deliberate indifference against Doe Defendants 1–10.  (ECF No. 8-1 at 13) (citing *Est. of Schuck v. Cnty. of San Diego*, No. 23-CV-785-DMS-AHG, 2024 WL 500711, at *6 (S.D. Cal. Feb. 8, 2024) (citing *Gordon I*)).  Their argument focuses on one element: that a reasonable official would not have appreciated the high degree of risk involved.  (*Id.* at 13–14) (the "allegations do not support a claim for deliberate indifference as to Sarabia's medical needs because, under the facts alleged, no reasonable person 'would have appreciated the high degree of risk involved'").  The Court does not entirely agree with Defendants' argument.  For the reasons below, the Complaint states a claim against the Doe One, Doe Two, Doe Three, and Doe Four.

**Doe One**.  At this stage, the Complaint states a claim against Doe One.  Based on the facts alleged a reasonable official would have appreciated the high degree of risk involved.  *See Sandoval*, 985 F.3d at 669.  Here, Sarabia told Deputy One that he needed medical attention.  (Compl. ¶ 17.)  That allegation alone may not be enough to state a claim

---

[1] The constitutional right to direct view safety checks does not displace the requirement that "litigants when first bringing a case plead facts plausibly satisfying each element of their deliberate indifference claim."  *See Schmitz v. Asman*, No. 2021 WL 5414287, at *4 (E.D. Cal. Nov. 19, 2021), *report and recommendation adopted*, 2021 WL 6052192 (E.D. Cal. Dec. 21, 2021).

24cv00032 DMS (DEB)

for deliberate indifference.  *See Devore v. Dominguez*, 2020 WL 7223261, at *3 (C.D. Cal. Sept. 15, 2020) (holding that allegations did not support claim of deliberate indifference when plaintiff alleged that "he requested 'medical attention' from the Defendants . . . and that they refused"), *report and recommendation adopted*, 2021 WL 1554062 (C.D. Cal. Apr. 20, 2021).  However at least one other inmate also told Doe One that Sarabia "needed medical attention."  (Compl. ¶ 17.)  Together these allegations, read in the light most favorable to Plaintiffs, lead to the inference that a reasonable official in the circumstances would have appreciated the risk to Sarabia.  *Cf. Lance v. Morris*, 985 F.3d 787, 796 (10th Cir. 2021) (holding that higher standard of subjective deliberate indifference satisfied when "other [detainees testified] that the need for medical attention was obvious").  Thus, at this stage, the Complaint states a claim as to Doe One.

**Doe Two, Doe Three, and Doe Four**.  Again, at this stage, the Complaint states a claim against Doe Two, Doe Three, and Doe Four.  The day before Sarabia died Doe Two, Doe Three, and Doe Four distributed medicine in his housing module.  (Compl. ¶ 18.) They called Sarabia's name, but he was too sick to hear the call, appear, or answer.  (*Id.* ¶ 18.)  And they did not check to see why Sarabia did not respond, (*id.* ¶ 19), even after a detainee reported that Sarabia did not respond and did not look good.  (*Id.* ¶ 20.)  Doe Two, Doe Three, and Doe Four left—they did not observe Sarabia or confirm that he was not suffering from a medical emergency.  (*Id.* ¶¶ 18–20.)  In other words, Sarabia was unresponsive.  A reasonable official in the alleged circumstances would have at least laid eyes on an unresponsive detainee "to determine whether [he needed] medical treatment." *Gordon II*, 6 F.4th at 973.  At this stage, the Complaint plausibly states a claim against Doe Two, Doe Three, and Doe Four.

**The remaining Doe Defendants**.  However, the Complaint does not state a Section 1983 claim for deliberate indifference against the other Doe Defendants.  In federal court, a plaintiff must "'allege specific facts showing how each particular doe defendant violated'" the plaintiff's rights.  *Thomas ex rel. Thomas*, 2021 WL 2715086, at *3 (quoting *Keavney v. Cty. of San Diego*, No. 19-cv-1947-AJB, 2020 WL 4192286, at *4 (S.D. Cal.

July 21, 2020)).   The Complaint does not contain specific allegations regarding the remaining Doe Defendants.   Rather, it contains general allegations that they failed to perform proper safety checks.   (*See* Compl. ¶ 21.)   Such allegations are insufficient to state a Section 1983 claim against the remaining Doe Defendants.   *See Brink v. Cty. of San Diego*, No. 23-cv-1756-DMS, 2024 WL 3315992 at *11 (S.D. Cal. July 3, 2024); *Cavanaugh v. Cty. of San Diego*, No. 3:18-cv-02557-BEN-LL, 2020 WL 6703592, at *12–13 (S.D. Cal. Nov. 12, 2020) (finding plaintiff failed to allege a deliberate indifference claim when his conclusory allegations that defendants "failed to properly conduct cell checks required to verify an inmate's safety and welfare" were insufficient to create a plausible claim that defendants intentionally chose the conditions of confinement and were not merely negligent).   Consequently, the Complaint fails to state a Section 1983 claim against the remaining Doe Defendants.

In sum, the Court grants in part and denies in part Defendants' motion to dismiss the Section 1983 claim for deliberate indifference to Sarabia's health and safety against Does 1–10.   The Court dismisses, with leave to amend, all but Doe One, Doe Two, Doe Three, and Doe Four from the first count.   *See Intri-Plex*, 499 F.3d at 1056 (dismissal without leave to amend is proper only when it is clear "the complaint could not be saved by any amendment").

## B.   Count 2: Section 1983 (14th Amendment) - deprivation of familial relationship

Plaintiffs also sued Defendants for deprivation of familial relationship under Section 1983 and the Fourteenth Amendment.   (Compl. ¶¶ 39–46.)   They allege that "Defendants' unconstitutional conduct deprived [Sarabia's children] of their substantive due process right" to familial relationship with their father.   (*Id.* ¶ 42.)   Defendants counter that the Court should dismiss Plaintiffs' claim for two reasons: (1) because Plaintiffs lack standing

to bring such a claim; and (2) because the allegations do not shock the conscious. The Court disagrees with both arguments.[2, 3]

### 1.   Sarabia's children have standing to bring a deprivation of familial relationship claim.

"A decedent's parents and children generally have the right to assert substantive due process claims under the Fourteenth Amendment." *Wheeler v. City of Santa Clara*, 894 F.3d 1046, 1057–58 (9th Cir. 2018). Yet, "'the mere existence of a biological link does not merit . . . constitutional protection.'" *Id.* (quoting *Lehr v. Robertson*, 463 U.S. 248, 256–58 (1983)). Rather, to warrant constitutional protection "even biological parents must maintain consistent involvement in a child's life and participation in child-rearing activities." *Id.* The same is true of children seeking constitutional protection of a relationship with their parents. *See id.*

Here, Plaintiffs have alleged sufficient facts to support their Fourteenth Amendment deprivation of familial association claim. The Minor Plaintiffs allege that they had a "close relationship and special bond with Sarabia[,]" (Compl. ¶ 25), and that the relationship included deep attachments and other aspects "that were typical of a close familial relationship." (*Id.*) Furthermore, Sarabia held out each Minor Plaintiff "as his child and participated in child-rearing" prior to his death. (*E.g.*, *id.*) Such allegations are plausible at this stage. *See Manzarek*, 519 F.3d at 1031 (a "court must "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party.") Moreover, such allegations are similar to others that that have survived a motion to dismiss. For example, in *Bradley-Aboyade v. Crozier*, the Plaintiff stated

---

[2] "The substantive due process right to family integrity or to familial association is well established. A parent has a 'fundamental liberty interest' in companionship with his or her child. *Kelson v. City of Springfield*, 767 F.2d 651, 654–55 (9th Cir.1985). A state may not interfere with this liberty interest, and indeed the violation of the right to family integrity is subject to remedy under § 1983." *Rosenbaum v. Washoe Cnty.*, 663 F.3d 1071, 1079 (9th Cir. 2011).

[3] Sarabia's wife is not pursuing a claim for deprivation of familial relationship under Section 1983 and the Fourteenth Amendment. (ECF No. 7.)

24cv00032 DMS (DEB)

sufficient facts at pleading stage by alleging: "[w]hile Decedent was living, he assumed responsibilities for Plaintiff's upbringing and maintained consistent contact with Plaintiff both during childhood and adulthood of Plaintiff." No. 2:19-CV-01098-TLN-AC, 2020 WL 4475088, at *4 (E.D. Cal. Aug. 4, 2020).

Defendants argue that "[t]he Minor Plaintiffs' alleged biological links and conclusory allegations simply do not suffice to support a claim for loss of familial association." (ECF No. 8-1 at 18.) In support they point to a pair of cases in which formulaic and conclusory allegations could not survive a motion to dismiss. (*Id.*) (citing *Estate of Mendez v. City of Ceres*, 390 F. Supp. 3d 1189 (E.D. Cal. 2019) ("*Mendez*"); *Est. of Chivrell v. City of Arcata*, 623 F. Supp. 3d 1032, 1044–45 (N.D. Cal. 2022) ("*Chivrell*")). Both *Mendez* and *Chivrell* rely on an unpublished Ninth Circuit case: *Mann v. City of Sacramento*, 748 F. App'x 112, 114 (9th Cir. 2018).[4]

In *Mann*, the plaintiffs sued for the loss of their brother. *Mann*, 748 F. App'x at 114. The Ninth Circuit, in an unpublished opinion, held that the brothers' relationship was not protected by the Constitution; and thus, they could not assert a claim. *Id.* at 114–15. The Ninth Circuit noted that relationships involving marriage, child-rearing, or cohabitation are protected by the First Amendment. *Id.* And that "we analyze the right of intimate association in the same manner regardless whether we characterize it under the First or Fourteenth Amendments." *Id.* at 115. It further explained that "[o]ther relationships, 'including family relationships,' may also be protected"—but only to "the extent that the 'objective characteristics' of the relationship (*i.e.* 'factors such as size, purpose, selectivity, and . . . exclu[sivity]') demonstrate that it is "sufficiently personal or private to warrant constitutional protection. *Id.* (alternations in original). The court therefore denied the brothers' claims because they lacked "specific facts about the "objective characteristics"

---

[4] *Menedez* expressly relies on *Mann*. *See Menedez*, 390 F.Supp.3d at 1215–16 (quoting Mann at length). And *Chivrell* relies on *Menedez*, and therefore by extension *Mann*. *See Chivrell*, 623 F. Supp. 3d at 1044–45.

of their relationships with [their deceased brother]." *Id.* In other words, the plaintiffs in *Mann* did not have a constitutionally protected relationship involving "marriage, child-rearing, or cohabitation." *Id.* Their claim failed in the absence of "objective characteristics" demonstrating that their brotherly bond warranted constitutional protection. *Id.*

This case is not like *Mann*. Here, Plaintiffs are Sarabia's surviving children. A type of relationship that is protected under *Mann*. *Id.* (citing *Bd. of Dirs. of Rotary Int'l v. Rotary Club of Duarte*, 481 U.S. 537, 545 (1987) ("The intimate relationships to which we have accorded constitutional protection include marriage; the begetting and bearing of children; child rearing and education; and cohabitation with relatives." (citations omitted))). Moreover, Sarabia held out the Minor Plaintiffs as his children, participated in child rearing, and had a relationship which included deep attachments and other aspects "that were typical of a close familial relationship." (Compl. ¶ 25.) In other words, Sarabia allegedly accepted "some measure of responsibility for [his children's] future." *Lehr*, 463 U.S. at 262. Accordingly, at this stage, Plaintiffs' have standing to sue for deprivation of familial relationship.

### 2.     Whether the allegations shock the conscious

For familial relationship claims, conduct violates substantive due process if it "shocks the conscience or offends the community's sense of fair play and decency." *Rosenbaum v. Washoe Cty.*, 663 F. 3d 1071, 1079 (9th Cir. 2011) (cleaned up). "A prison official's deliberately indifferent conduct will generally 'shock the conscience' so as long as the prison official had time to deliberate before acting or failing to act in a deliberately indifferent manner." *Lemire v. California Dep't of Corr. & Rehab.*, 726 F.3d 1062, 1075 (9th Cir. 2013). Defendants, in their opening brief, argue, in a single sentence, that "it is unimaginable that the lack of an immediate medical response to Sarabia's report that he did not 'feel well' or 'look well' could shock anyone's conscience." (ECF No. 8-1 at 18) (conceding that "no cases could be located"). The Court denies Defendants' argument for two reasons.

24cv00032 DMS (DEB)

First, the facts alleged show that Does One through Four had time to deliberate.  As noted above, based on Plaintiffs' allegations, Does One through Four each acted with deliberate indifference to Sarabia's health and safety.  Each had time to deliberate before acting, or failing to act, with deliberate indifference.  For instance, Doe One acted with deliberate indifference when he did not summon medical care for Sarabia.  And other inmates also told Doe One that Sarabia needed medical attention.  Simply, Doe One had hours to act before Sarabia's death later that evening.  Likewise, Doe Two, Doe Three, and Doe Four had time to deliberate before failing to conduct a direct view safety check.  They called out to Sarabia to give him his medicine, Sarabia did not appear or respond, they ordered another inmate to check on Sarabia, that inmate checked on Sarabia, and then they left without checking on Sarabia.  Based on those allegations it is reasonable to infer that, during that Doe One, Doe Two, Doe Three, and Doe Four had time to deliberate before failing to summon medical care. *See Palacios v. Cty. of San Diego*, No. 20-CV-450-MMA (DEB), 2020 WL 4201686, at *11 (S.D. Cal. July 22, 2020) (analogous facts leading up to inmate's death "plausibly demonstrate that Unknown Department Personnel could have had time to actually deliberate").  In sum, when read in the light most favorable to Plaintiffs, Does One through Four had enough time to deliberate before acting with deliberate indifference; and therefore, their alleged actions shock the conscious.

Second, Defendants have not carried their burden.  Under Fed. R. Civ. P. 7(b)(1)(B) a movant must "state with particularity the grounds for seeking" a court order. *See also Levi Strauss & Co. v. Connolly*, 2023 WL 2347433, at *8 (N.D. Cal. Mar. 2, 2023) ("[Defendant] has not identified any pleading deficiency in [plaintiffs] claims and therefore has not met his burden to show that no claim has been stated"); *Carlson v. Colorado Ctr. for Reproductive Med., LLC*, 2021 WL 5494273, at *3 (N.D. Cal. Nov. 23, 2021) (finding that defendants' conclusory arguments that plaintiffs' allegations did "not amount to any viable cause of action" were insufficient to satisfy their burden to show that no claim had been stated).

Defendants devote one short paragraph in their opening brief to this particular argument. (ECF No. 8-1 at 18.) Therein, they concede that they could not locate any cases to support their argument. (*Id.*) And their reply brief only addresses the cases that Plaintiffs cited in support. (ECF No. 10 at 4–5.) Defendants' approach ignores that they have the burden. This Court has not granted similar unsupported arguments. *Brink v. Cty. of San Diego*, 2024 WL 3315992 at *11 (S.D. Cal. July 3, 2024) (collecting cases); *see Al-Tamimi v. Adelson*, 916 F.3d 1, 6 (D.C. Cir. 2019) ("[m]entioning an argument 'in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones' is tantamount to failing to raise it."). Likewise, the Court declines to find that Defendants have carried their burden for this argument.

### C.   Qualified Immunity

Next, Defendants assert that the Section 1983 claims against them must be dismissed because they have qualified immunity. At this stage, the Court disagrees. Qualified immunity is an affirmative defense that must be raised by a defendant. *O'Brien v. Welty*, 818 F.3d 920, 936 (9th Cir. 2016). It shields government officials from liability for civil damages, (*Sabra v. Maricopa Cty. Cmty. Coll. Dist.*, 44 F.4th 867, 886 (9th Cir. 2022)), but only if the official is performing discretionary functions and "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* To determine whether a state official is entitled to qualified immunity, the Court must consider: (1) "whether the evidence viewed in the light most favorable to the plaintiff is sufficient to show a violation of a constitutional right"; and (2) "whether that right was clearly established at the time of the violation." *Sandoval*, 985 F.3d at 671. Additionally, if a defendant asserts qualified immunity in a motion to dismiss, "dismissal is not appropriate unless [the court] can determine, based on the complaint itself, that qualified immunity applies." *O'Brien*, 818 F.3d at 936 (internal quotation marks omitted). Defendant fails to meet this burden.

As explained above, the Complaint plausibly alleges that Does One through Four violated Sarabia's Fourteenth Amendment Right to adequate medical care and direct view

safety checks.  And so, the Court must turn to the second qualified immunity prong—whether that right was "clearly established at the time of the violation." *Pauluk v. Savage*, 836 F.3d 1117, 1125 (9th Cir. 2016) (quoting *Espinosa v. City & Cty. of San Francisco*, 598 F.3d 528, 532 (9th Cir. 2010)).  The unlawfulness of an officer's conduct is "clearly established," when, "at the time of the officer's conduct, the law was 'sufficiently clear that every reasonable official would understand that what he [wa]s doing' [wa]s unlawful." *District of Columbia v. Wesby*, 583 U.S. 48 (2018).  "In other words, existing law must place the [un]constitutionality of the officer's conduct 'beyond debate.'" *Id*.  If not, then the officers are entitled to qualified immunity.  *See id.*

The Fourteenth Amendment right to medical care was clearly established at the time of the violation.  In 2021, the Ninth Circuit held that "[i]ndividuals in state custody have a constitutional right to adequate medical treatment." *Sandoval*, 985 F.3d at 667, 680 (right to adequate medical care under the Fourteenth Amendment is clearly delineated).  Moreover, as of the same year, "pre-trial detainees . . . have a right to direct-view safety checks sufficient to determine whether their presentation indicates the need for medical treatment." *Gordon II*, 6 F.4th at 973.  Sarabia died in 2022—roughly a year after *Sandoval* and *Gordon II*.  (Compl. ¶¶ 14–22.)  As alleged, Defendants acted with deliberate indifference to Sarabia's health and safety because they failed to summon medical care or perform adequate safety checks.  (*Id.* ¶ 32–33.)  As a result, the rights at issue were clearly established and, at this stage, Defendants do not have qualified immunity.

Defendants argue that Plaintiffs must "identify a clearly-established case wherein constitutional liability was found after an incarcerated person was denied medical care after simply complaining that he did not feel well." (ECF No. 8-1 at 25.)  That argument fails.[5]

---

[5] Additionally, the Court would also deny Defendants' argument because they failed to carry their burden or properly support it.  *See Al-Tamimi*, 916 F.3d at 6 ("[m]entioning an argument 'in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones' is tantamount to failing to raise it.")

The Supreme Court does not require "a case directly on point for a right to be clearly established." *White*, 580 U.S. at 79 (cleaned up).  Moreover, general statements are capable "of giving fair and clear warning to officers." *White*, 137 S. Ct. at 552 (internal quotations omitted); *see also Polanco v. Diaz*, 76 F.4th 918, 931 (9th Cir. 2023) ("COVID-19 may have been unprecedented, but the legal theory that Plaintiffs assert is not.").  Both *Sandoval*'s and *Gordon II*'s holdings place the constitutional issue beyond debate.  *See Sandoval*, 985 F.3d at 680 (holding that when a prison official knows a prisoner is suffering from a serious acute medical condition, the official must treat the condition with reasonable diligence); *Gordon II*, 6 F.4th at 973 ("We now hold that pre-trial detainees do have a right to direct-view safety checks sufficient to determine whether their presentation indicates the need for medical treatment").  Plaintiffs' allegations fit within those holdings.  (Compl. ¶¶ 32–33.)  As a result, Doe One, Doe Two, Doe Three, and Doe Four do not have qualified immunity.

### D.    Count 5: Bane Act Claim

The Complaint alleges that Defendants are liable under California Civil Code section 52.1, codified as the Bane Act.  Defendants argue the Bane Act claims should be dismissed for two reasons:  First, that the Complaint does not claim the Doe Defendants acted with reckless disregard to Sarabia's right to adequate medical care; second, that the County cannot be sued, or is immune, under the Bane Act.  For the reasons below, the Court does not agree with Defendants' arguments.

"The essence of a Bane Act claim is that the defendant, by the specified improper means (i.e., 'threats, intimidation or coercion'), tried to or did prevent the plaintiff from doing something he or she had the right to do under the law . . . ."  *Cornell v. City and County of San Francisco*, 17 Cal. App. 5th 766, 791 (2017) (quoting Cal. Civ. Code § 52.1).  Violations of federal constitutional and statutory rights are all cognizable under the Bane Act.  *See* Cal. Civ. Code § 52.1(b).  "The elements of a Bane Act claim are essentially identical to the elements of a § 1983 claim, with the added requirement that the government official had a "specific intent to violate" a constitutional right."  *Hughes v. Rodriguez*, 31

F.4th 1211, 1224 (9th Cir. 2022).  The Court has already determined that the Complaint states a Section 1983 claim against Deputies One through Four.  So, if they acted with specific intent, then the Bane Act Claim against them will survive.

To show specific intent, a plaintiff must satisfy two requirements.  First, the right at issue must be "clearly delineated and plainly applicable under the circumstances of the case[.]"  *Cornell*, 17 Cal. App. 5th at 803.  Second, the defendant must have "commit[ted] the act in question with the particular purpose of depriving" the victim of his enjoyment of the interests protected by that right.  *Id.*  The specific intent requirement "is satisfied where the defendant . . . acted with '[r]eckless disregard of the right at issue.'"  *Est. of Serna v. Cty. of San Diego*, No. 20CV2096-LAB-MSB, 2022 WL 827123, at *8 (S.D. Cal. Mar. 18, 2022) (alteration in original).

The complaint satisfies both prongs.  First, the rights at issue—to adequate medical care and direct view safety checks are clearly established.  *Gordon II*, 6 F.4th at 973 ("We now hold that pre-trial detainees do have a right to direct-view safety checks sufficient to determine whether their presentation indicates the need for medical treatment."); *see also Sandoval*, 985 F.3d at 667, 680 (right to adequate medical care under the Fourteenth Amendment is clearly delineated).  Second, the Complaint alleges that Deputies One through Four acted with "reckless disregard to Sarabia's constitutional rights."  (Compl. ¶ 64.)  It further alleges facts to support that claim.  (*Id.* ¶¶ 17–23, 62.)  For instance, Doe One allegedly knew Sarabia needed medical attention but did not act.  (*Id.* ¶ 18.)  And Does Two through Four failed to conduct a direct view safety check even though they knew that Sarabia was unresponsive and did not look good.  (*Id.* ¶ 20.)  As noted, under the Bane Act, "[r]eckless disregard of the 'right at issue' is all that [i]s necessary."  *Cornell*, 17 Cal. App. 5th at 803.  In the Section 1983 context, a claim under the objective deliberate indifference standard is akin to showing reckless disregard.  *See Sandoval*, 985 F.3d at 669 ("[T]he plaintiff must show that the defendant's actions were objectively unreasonable, which requires a showing of . . . something akin to reckless disregard") (internal quotations omitted).  Here, as set forth above, the Court has determined that the Complaint alleges a

17

24cv00032 DMS (DEB)

claim under the objective deliberate indifference standard.  (*See, e.g.*, Compl. ¶¶ 62–67.)  Thus, the Complaint states a Bane Act claim against Defendants.[6]

### E.   Count 3: Wrongful Death

Plaintiffs also sued Defendants for wrongful death under California Code of Civil Procedure Section 377.60.  (Compl. ¶¶ 47–54.)  Defendants argue that Plaintiffs lack standing because they "have not alleged they have standing to pursue this claim."  (ECF No 8-1) (devoting a single sentence to argument).  The Court disagrees.  Under California law a "decedent's surviving spouse, domestic partner, children, and issue of deceased children" have standing to assert a wrongful death claim.  Cal. Code Civ. Proc. § 377.60(a).  Here, Plaintiffs allege that they are Sarabia's surviving spouse and children.  (Compl. ¶ 48.)  Furthermore, Sarabia held them out as his children and participated in child-rearing with them.  (*Id.* ¶ 27.)  At this stage, the Court must accept Plaintiffs' "factual allegations in the complaint as true."  *Manzarek*, 519 F.3d at 1031.  As a result, Plaintiffs have plausibly alleged standing to bring a wrongful death claim.

### F.   Immunity Claims

Defendants also advance a smorgasbord of immunity arguments: (1) that they are immune from Plaintiffs' wrongful death claim under California Government Code § 815; (2) that they are immune from Plaintiffs' wrongful death and negligence claims under California Government Code §§ 844.6 and 845.6; and (4) that they are immune from Plaintiffs' negligence and Bane Act claims under California Government Code § 855.6.  Explained below, Defendants' arguments for immunity lack merit.

### 1.   California Government Code § 815

Defendants' first immunity argument is that the County is immune from Plaintiffs' wrongful death claim under California Government Code § 815.  (ECF No. 8-1 at 19.)

---

[6] For the reasons explained above, the Complaint does not state a Section 1983 claim against the remaining Doe Defendants.  Therefore, the Complaint does not state a Bane Act claim against the remaining Doe Defendants

Section 815 provides that a public entity is not liable for injury "[e]xcept as otherwise provided by statute." Cal. Gov't Code § 815 (preamble). The next section states that "a public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment." Cal. Gov't Code § 815.2(a). Indeed, the Complaint alleges that the County is liable for the misconduct of its employees under Section 815.2(a). (Compl. ¶ 54.) Simply, the County is not immune under § 815 because another statute provides for liability. *Feldman v. Sutton*, No. 22-cv-341, 2022 WL 3019936, at *9 (S.D. Cal. July 29, 2022) ("while CGC § 815 provides that public entities are not generally liable for injuries caused by their employees unless otherwise provided by statute, *see* Cal. Gov. Code § 815, § 815.2 provides the statutory vehicle for such municipal liability"); *see also Brink*, 2024 WL 3315992 at *9 (rejecting nearly identical argument made by the County of San Diego). Thus, the Court rejects Defendants' § 815 argument.

### 2. California Government Code §§ 844.6 and 845.6

Next, Defendants argue that the County "is immune from Plaintiffs' wrongful death [and negligence claims] under Government Code section[s] 844.6" and 845.6 (ECF No. 8-1 at 19–22.) The Court also recently addressed similar arguments in *Brink v. County of San Diego*, 2024 WL 3315992 at *8 (rejecting the County's immunity arguments). There, the Court explained that immunity hinged on the interaction between sections 844.6 and 845.6. *Id.* The same principles apply in this case and can be summarized as follows:

> (1) public entities cannot be held liable for wrongfully or negligently injuring prisoners but public employees can be; unless (2) the prisoner's injury resulted from a failure to furnish medical care (in which case, neither the public employee or public entity are liable); except (3) when the public employee knew or had reason to know that the injured prisoner was in need of immediate medical care and failed to take reasonable action to summon such medical care (in which case, both the public employee and the public entity are liable).

24cv00032 DMS (DEB)

*Id.* (quoting *Bousman v. Cty. of San Diego*, No. 3:23-CV-1648-W-JLB, 2024 WL 1496220, at *11 (S.D. Cal. Apr. 5, 2024) (internal footnotes and citations omitted)); *see also* Cal. Gov't Code § 845.6.

Here, Section 844.6 does not grant Defendants immunity—at least at this stage. Reading the Complaint in the light most favorable to Plaintiffs, Sarabia and other detainees told Doe One that Sarabia needed medical assistance. (Compl. ¶ 17.) Yet Doe One did not summon medical care. (*Id.*) And Deputies Two through Four failed to summon medical care for Sarabia despite his inability to appear or respond. (*Id.* ¶ 20.) Moreover, one detainee warned the doe deputies that Sarabia did not look good. (*Id.*) Despite this, Deputies Two through Four did not summon medical care for Sarabia. As a result, "the County is not immune from the Bane Act insofar as it would be vicariously liable for [the] Does' . . . alleged failure to reasonably summon immediate medical care under California Government Code section 845.6." *Bousman*, 2024 WL 1496220, at *12.[7]

### 3.   California Government Code § 855.6

Finally, Defendants argue that the County is immune under Government Code section 855.6. That section states that neither a public employee nor entity is liable for injury caused by the failure to make an adequate physical or mental examination. Cal. Gov't Code § 855.6. In response, Plaintiffs note that Section 855.6 does not apply where jail personnel fail to properly monitor a detainee. *Mendoza v. County of San Bernardino*, Case No. EDCV 19-1056 JGB, 2022 WL 3012218, at *10 (C.D. Cal. May 5, 2022) (citing *Trujillo v. Cal. Forensic Med. Grp.*, 2021 WL 4803484, at *5 (C.D. Cal. July 8, 2021)); *Lum v. Cty. of San Joaquin*, 756 F. Supp. 2d 1243 (E.D. Cal. 2010). Defendants do not offer a reply or contrary authority to Plaintiffs' argument. Accordingly, the Court will follow the cases Plaintiffs cite and decline to hold that the County is immune under Section 855.6.

---

[7] For the same reasons Section 845.6 does not grant Defendants immunity from Plaintiffs' Bane Act claims.

### G.     Doe Defendants are not prohibited

Defendants also argue that all Doe Defendants should be dismissed because they are not permitted under the Federal Rules.  However, the Ninth Circuit allows doe defendants. *Wakefield v. Thompson*, 177 F.3d 1160, 1163 (9th Cir. 1999) ("'where the identity of the alleged defendant[ ][is] not [ ] known prior to the filing of a complaint[,] the plaintiff should be given an opportunity through discovery to identify the unknown defendants, unless it is clear that discovery would not uncover the identities, or that the complaint would be dismissed on other grounds'" (alternations in original)).  Therefore, the Court will give Plaintiffs "an opportunity through discovery to identify the unknown defendants." *Id.*

That does not mean that the Doe Defendants present no problems.  For example it is unclear if County Counsel represents the Doe Defendants—or has authority to advance arguments on behalf of them.  An attorney-client relationship can only be created by an express or implied contract.  *Shen v. Miller*, 212 Cal. App.4th 48, 57, 150 Cal. Rptr. 3d 783, 789 (Cal. App. 2012).  The County of San Diego does have the authority to represent individual doe defendants—but only "**upon request** of an employee or former employee." Cal. Gov't Code § 995 (emphasis added).  Here, there is no indication that County Counsel represents the Doe Defendants.  For instance, defense counsels' signature block states they are "Attorneys for Defendant County of San Diego." (ECF No. 8 at 1.)   Defense counsel also did not respond to Plaintiffs' argument on this issue; and so the Court cannot determine if an express or implied contract for representation exists, or if the Does asked the County to represent them.[8]  At this stage, the Court cannot determine whether the attorneys for the County of San Diego have authority to represent the unidentified defendants.  Nevertheless, defense counsel should clarify their authority to represent the unidentified defendants in future motions.

---

[8] Representation of unidentified defendants raises other legal issues.  For example, whether the appearance and arguments of County Counsel on behalf of Doe Defendants—who they may not represent—has waived certain defenses available to the Doe Defendants. *See* Fed. R. Civ. P. 12(b)(2)–(5), (h).

24cv00032 DMS (DEB)

There are also problems with service on the Doe Defendants.  The 90-day deadline to serve defendants applies to identified and unidentified defendants.  *See Williams v. Los Angeles*, No. 23-55155, 2024 WL 2862587 (9th Cir. June 6, 2024) (affirming dismissal when a party "failed to serve process on the Doe Defendants within 90 days of filing their complaint and . . . failed to show good cause or excusable neglect for their delay").  It has been more than 90-days since Plaintiffs filed the Complaint.  There is no indication that Plaintiffs have served the Doe Defendants.  Accordingly, within 30-days of this order, Plaintiffs shall file proof of service on the docket or show good cause or excusable neglect for their delay.

## IV.   CONCLUSION AND ORDER

For the reasons explained above the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' motion to dismiss the Complaint.  The Court **ORDERS** as follows:

(1) **Count 1**: The Court **DENIES** the motion to dismiss Doe One, Doe Two, Doe Three, and Doe Four from the Section 1983 deliberate indifference claims and **GRANTS** the motion to dismiss as to all other Doe Defendants.

(2) **Count 2**: The Court **DENIES** the motion to as to the deprivation of familial relationship claim.

(3) **Count 3**: The Court **DENIES** the motion to dismiss the wrongful death claim.

(4) **Count 4**: The Count **DENIES** the motion to dismiss the negligence claim.

(5) **Count 5**: The Court **Denies** the motion to dismiss Doe One, Doe Two, Doe Three, and Doe Four from the Bane Act claims and **GRANTS** the motion to dismiss as to all other Doe Defendants.

(6) **Count 6**: The Count **DENIES** the motion to dismiss California Government Code § 845.6 claim.

(7) Defense counsel shall clarify their authority to represent the unidentified Doe Defendants if they file another dispositive motion on their behalf.

(8) Within 30-days of this Order, Plaintiffs shall file proof of service on the Doe Defendants or show good cause or excusable neglect for their delay.

Within 14-days of the date of this Order, the Plaintiff may file a second amended complaint which cures the pleading deficiencies identified in this Order.

**IT IS SO ORDERED**.

Dated:  September 30, 2024

Hon. Dana M. Sabraw, Chief Judge
United States District Court

24cv00032 DMS (DEB)